| | |
|---|---|
| PENN NATIONAL SECURITY INSURANCE COMPANY AND PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>EAST CAROLINA MASONRY, INC.,<br><br>Defendant. | **DECLARATORY JUDGMENT COMPLAINT** |

**COME NOW** the Plaintiffs, Penn National Security Insurance Company ("Penn National Security") and Pennsylvania National Mutual Casualty Insurance Company ("Pennsylvania National"), by and through counsel, and pursuant to Rules 7, 8 and 57 of the Federal Rules of Civil Procedure, and file this Declaratory Judgment Complaint against Defendant East Carolina Masonry, Inc. ("ECM") as follows:

**Preliminary Statement**

1. Pursuant to 28 U.S.C. § 2201, Penn National Security and Pennsylvania National (collectively, "Penn National") seek a declaratory judgment and adjudication concerning the rights, obligations and liabilities of the parties with respect to coverage under policies of insurance issued by Penn National to ECM with respect to claims against ECM in an action captioned "*New Bern Riverfront Development, LLC, v. Weaver Cooke Construction, LLC,* et al. *and Weaver Cooke Construction, LLC,* et al. *v. Skysail Owners Association, Inc.,* et al.,"

(Adversary Proceeding No. 10-00023-8-JRL), pending before the U.S. Bankruptcy Court for the Eastern District of North Carolina, Eastern Division.

## Jurisdiction

2. Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount of controversy exceeds the sum of $75,000.

## Venue

3. This declaratory judgment action properly lies in the U.S. District Court for the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1391(b) because ECM is a corporation organized under the laws of the State of North Carolina with its principal place of business in Greenville, Pitt County, North Carolina, and because the policies of insurance at issue in this action were issued to ECM in this judicial district and the construction project at issue in the underlying adversary proceeding for which coverage is sought is located in this judicial district, and therefore, a substantial part of the events giving rise to this action occurred in this judicial district.

## Parties

4. Penn National Security is an insurance company duly organized and existing under the laws of the State of Pennsylvania, with its principal place of business located in Harrisburg, Pennsylvania.

5. Pennsylvania National is an insurance company duly organized and existing under the laws of the State of Pennsylvania, with its principal place of business located in Harrisburg, Pennsylvania.

6. Upon information and belief, ECM is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Greenville, North Carolina. The registered agent for ECM is Stephen M. Harrington with a mailing address of 1000 Port Terminal Road, Greenville, North Carolina 27858.

**Facts**

7. On March 30, 2009, New Bern Riverfront Development, Inc. ("New Bern") filed a complaint against Weaver Cooke Construction Company, LLC ("Weaver Cooke") and other defendants in the Superior Court of Wake County, North Carolina, C.A. 09-CvS-4770 (the "State Court Action"), asserting claims arising from alleged defects in the construction of the Skysail Condominiums located on the Trent River waterfront in New Bern, North Carolina ("Project").

8. On November 30, 2009, New Bern filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code, and removed the State Court Action to the United States District Court of the Eastern District of North Carolina, where such action is currently pending before United States Bankruptcy Court for the Eastern District of North Carolina, captioned "*New Bern Riverfront Development, LLC, v. Weaver Cooke Construction, LLC,* et al. *and Weaver Cooke Construction, LLC,* et al. *v. Skysail Owners Association, Inc.,* et al., No. 10-00023-8-JRL (the "Adversary Proceeding"). Copies of New Bern's First Amended Complaint and First Supplemental Complaint in the Adversary Proceeding are attached hereto as **Exhibits 1** and **2**, respectively, and incorporated by reference.

9. Weaver Cooke filed a Third-Party Complaint against ECM and others in the Adversary Proceeding. A copy of Weaver Cooke's Second Third-Party Complaint is attached hereto as **Exhibit 3**, and incorporated by reference.

10. It is alleged in the Adversary Proceeding that Weaver Cooke and New Bern entered into a contract for the construction of the Project on or about July 27, 2006, whereby Weaver Cooke was required to construct condominium, parking, recreational, common area, and related facilities.

11. New Bern alleges that Weaver Cooke failed to complete the work required by the contract between Weaver Cooke and New Bern for the construction of the Project, and to cure or correct its material and substantial breach of the contract. Further, New Bern alleges that Weaver Cooke wrongfully refused to discharge or otherwise cancel assigned liens for units of the Project for which Weaver Cooke had already provided lien waivers.

12. Based upon these allegations, New Bern asserts claims for Breach of Contract, Willful & Egregious Breach, Bad Faith, Breach of the Covenant of Good Faith, Unfair and Deceptive Trade Practices against Weaver Cooke in the Adversary Proceeding.

13. It is alleged in the Adversary Proceeding that in 2006 and 2007, Weaver Cooke entered into written subcontract agreements with contractors, including ECM, to perform work on the Project. Specifically, Weaver Cooke claims to have entered into a subcontract with ECM to provide masonry work on the Project.

14. Weaver Cooke alleges in its Second Third-Party Complaint that New Bern has alleged and asserted that work performed by Weaver Cooke in connection with the Project through the Third-Party Defendants (including ECM) was defective and not in conformance with the requirements of the contract between Weaver Cooke and New Bern for the construction of the Project, and that New Bern alleges that Weaver Cooke is responsible for the cost of repairing or replacing such work, and other damages as an alleged consequence thereof.

15. Weaver Cooke further alleges that at least some portions of the deficiencies and nonconformities alleged and asserted by New Bern against Weaver Cooke in relation to the Project relate to the work, design, labor performed and/or materials supplied by each of the said Third-Party Defendants (including ECM) in connection with their Subcontracts; and relate to injury or damage to property other than that of the Third-Party Defendant, and to property other than property which is the subject of their Subcontract.

16. Based upon these allegations, Weaver Cooke asserts claims for Negligence, Contractual Indemnity, and Breach of Contract against each of the Third-Party Defendants (including ECM) in the Adversary Proceeding.[1]

17. On March 23, 2017, the bankruptcy court granted summary judgment in favor of ECM on the Negligence claim asserted by Weaver Cooke against ECM, in accordance with an order entered by the district court on March 17, 2017, finding that the damages Weaver Cooke sought in negligence from ECM in the Adversary Proceeding are to property that was the subject of the subcontract between Weaver Cooke and ECM, and so such damages are considered economic loss and ECM was entitled to summary judgment on the entirety of the claims for Negligence asserted by Weave Cooke against ECM in the Adversary Proceeding.

18. Specifically, the district court held that:

> ECM's subcontract related to installation of the brick veneer at the project. However, ECM's subcontract and work thereunder cannot be considered in isolation from other aspects of the project. ECM's subcontract was directly tied to the general contract between New Bern and Weaver Cooke and the work of other subcontractors. The subcontract defined ECM's work as the masonry construction portion of the general contract and required ECM to complete its work in accordance with the plans and specifications for the project. In addition, the subcontract required ECM to coordinate its work

---

[1] Although labeled as a claim for Breach of Express Warranty in the First Amended Complaint, the court in the Adversary Proceeding concluded that such claim was in essence a breach of contract claim. [D.E. 969 (Adversary Proceeding), pp. 6-7; D.E. 1568 (Adversary Proceeding), p. 9, fn. 4).

with Weaver Cooke to avoid interfering with other subcontractors' work. Similarly, ECM was obligated to take precautions to protect other subcontractors' work from damage caused by its work. Regarding the physical aspect of ECM's work, it "was to be integrated with the work of other subcontractors." (Weaver Cooke's Mem. Resp. ECM's Mot. Summ. J., DE # 28-2, at 35.) It was thus within the contemplation of the parties, at the time of contracting, that defects in ECM's work could result in damage to property other than the masonry construction that ECM undertook.

Given the relationship of ECM's subcontract to the general contract for the project and given the nature of ECM's work, the court concludes that the damages Weaver Cooke seeks in negligence from ECM are to property that was the subject of the subcontract. Accordingly, such damages are considered economic loss, and the court reverses the bankruptcy court as to this part of its order. ECM is entitled to summary judgment on the entirety of Weave Cooke's negligence claim.

*Weaver Cooke Constr., LLC v. E. Carolina Masonry, Inc.*, No. 5:14-CV-710-BR, 2017 WL 1088290 (E.D.N.C. Mar. 17, 2017).

19. On June 26, 2018, the bankruptcy court granted summary judgment in favor of ECM on the claim for Contractual Indemnity that had been asserted by Weaver Cooke against ECM in the Adversary Proceeding. In dismissing Weaver Cooke's claim for Contractual Indemnity against ECM, the court held that:

> [P]er the language of its own subcontract, Weaver Cooke may seek indemnity for those damages "arising out of or resulting from Subcontractor's performance of Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to ... injury to or destruction of tangible property (other than Subcontractor's Work itself)." D.E. 686, Ex. 1, ¶ 16.2 (emphasis added). To the extent that Weaver Cooke seeks damages based on alleged injury *to these components* that recovery is precluded by the language just discussed.
> 
> ***
> 
> ECM's motion for summary judgment on the contractual indemnity claim is ALLOWED with respect to Weaver Cooke's claim for damages relating to "the Work" performed by ECM, that being the masonry work as defined within the parties' subcontract and the

6

22232900.v1

attachments thereto, any damages sought by Weaver Cooke are excepted from recovery in indemnity. Further, with respect to Weaver Cooke's claim for any water intrusion damages resulting from ECM's allegedly negligent performance of its work resulting in damages to other tangible property at SkySail, the motion is ALLOWED on grounds that Weaver Cooke has failed to satisfy its burden of showing proximate cause.

[D.E. 1568 (Adversary Proceeding), pp. 15, 20]

20. Accordingly, the only claim against ECM remaining in the Adversary Proceeding is Weaver Cooke's claim for Breach of Contract against ECM.

21. In support of the Breach of Contract claim asserted against ECM in the Adversary Proceeding, Weaver Cooke alleges:

> 35. To the extent it is determined that any of the work performed by Weaver Cooke in connection with the Project was defective or otherwise not in conformance with the requirements of the Construction Contract, and to the extent it is determined that any such alleged deficiencies or nonconformities relate to the design, labor or materials supplied by Third-Party Defendants, or any of them, in connection with the Project, then each such Third-Party Defendant is in breach of the aforesaid warranties and guarantees.
>
> 36. To the extent Weaver Cooke is liable, in any amount, arising out of design, labor or materials provided by Third-Party Defendants, or any of them, in connection with the Project, any and all such liability being expressly denied by Weaver Cooke, then such Third-Party Defendants are liable to Weaver Cooke for all such amounts, as a direct and proximate result of its breach of warranty, plus interest and attorney's fees as allowed by law.

[D.E. 345 (Adversary Proceeding), p. 9]

### The Penn National Policies

7

22232900.v1
Case 4:19-cv-00053-FL   Document 1   Filed 04/09/19   Page 7 of 12

22. Penn National Security issued a commercial general liability policy, policy no. CX9 0642354, to "East Carolina Masonry Inc." at 1530 South Evans Street, Suite 101, Greenville, North Carolina, effective from August 30, 2007 to August 30, 2008 (the "Penn National CGL Policy"). A copy of the Penn National CGL Policy is attached hereto as **Exhibit 4**.

23. Pennsylvania National issued a commercial umbrella liability policy, policy no. UL90642354, to "East Carolina Masonry Inc." at 1530 South Evans Street, Suite 101, Greenville, North Carolina, effective from August 30, 2007 to August 30, 2008 (the "Penn National Umbrella Policy"). A copy of the Penn National Umbrella Policy is attached hereto as **Exhibit 5**.

24. The Penn National CGL Policy and the Penn National Umbrella Policy will be collectively referred to as the "Penn National Policies" or the "Policies".

25. ECM tendered the claims against it in the Adversary Proceeding to Penn National for a defense under the Penn National Policies.

26. Although Penn National contends that the Penn National Policies do not provide coverage to ECM in the Adversary Proceeding, Penn National is currently providing a defense to ECM in the Adversary Proceeding under a full reservation of Penn National's rights to disclaim coverage.

27. Penn National has filed the present action in order to determine the relative rights, duties, and obligations of the parties under the Penn National Policies with regard to the claims and damages asserted against ECM in the Adversary Proceeding.

## COUNT I:  DECLARATORY JUDGMENT

8
22232900.v1
Case 4:19-cv-00053-FL   Document 1   Filed 04/09/19   Page 8 of 12

28. Penn National incorporates by reference herein paragraphs 1 through 27.

29. ECM is not entitled to coverage under the Penn National Policies for the claims asserted against it in the Adversary Proceeding because the Policies contain terms, conditions, and exclusions which preclude coverage for the claims and damages sought against ECM in the proceeding.

30. The claims and damages asserted against ECM in the Adversary Proceeding are not for "property damage" as that term is defined in the Penn National Policies, as required to trigger coverage under the "Insuring Agreements" in the Policies.

31. The claims and damages asserted against ECM in the Adversary Proceeding were not caused by an "occurrence" as that term is defined in the Policies, as required to trigger coverage under the "Insuring Agreements" in the Policies.

32. The claims and damages asserted against ECM in the Adversary Proceeding are expressly excluded from coverage under the Penn National Policies because the damages claimed by ECM were expected or intended.

33. The claims and damages asserted against ECM in the Adversary Proceeding are expressly excluded from coverage under the Penn National Policies as damages for which ECM is obligated to pay by reason of the assumption of liability in a contract or agreement.

34. The damages claimed in the Adversary Proceeding are expressly excluded from coverage under the Penn National Policies as damages to that particular part of real property on which ECM, or any contractors or subcontractors working directly or indirectly on behalf of ECM, were performing operations and such damages arose out of those operations.

35. The damages claimed in the Adversary Proceeding are expressly excluded from coverage under the Penn National Policies as damages to that particular part of real property that must be restored, repaired or replaced because the work of ECM was incorrectly performed on it.

36. The damages claimed in the Adversary Proceeding are expressly excluded from coverage under the Penn National Policies as to ECM's work arising out of it or any part of it.

37. The Penn National Policies do not provide coverage to ECM for any of the claims or damages resulting from the allegations contained in the Adversary Proceeding to the extent that the claimed damages did not occur within the coverage periods of the Policies.

38. The damages claimed in the Adversary Proceeding are excluded from coverage under the Penn National Policies because the damages claimed otherwise fall outside the scope of the "Insuring Agreements" in the Policies or are excluded from coverage by one or more of the policy exclusions.

39. Penn National requests this Court to declare the relative rights, duties, and obligations of the parties to this action under the Penn National Policies with regard to the claims and damages asserted against ECM in the Adversary Proceeding. Specifically, Penn National requests this Court to declare, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that Penn National has no obligation under the Policies to defend or indemnify ECM for any costs it, or anyone on its behalf, incurs in defending the Adversary Proceeding, and that Penn National has no obligation to indemnify ECM for any damages arising out of the allegations contained in the Adversary Proceeding.

40. A genuine, actual and justiciable controversy between and among the parties to this action has arisen and presently exists concerning coverage afforded by Penn National pursuant to

the Penn National Policies, and Penn National is entitled to a declaratory judgment as to its obligations and liabilities under the Policies.

41. This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201, *et seq*. A final ruling by this Court will determine the rights and obligations of Penn National and ECM, and will settle the controversy among them as to the above-referenced insurance coverage issues.

**WHEREFORE**, Plaintiffs, Penn National Security Insurance Company and Pennsylvania National Mutual Casualty Insurance Company, respectfully pray the Court as follows:

1. That the Court declare and decree that ECM is not entitled to coverage under the Penn National Policies for the claims asserted against ECM in the Adversary Proceeding;

2. That the Court declare and decree that Penn National is not required to defend ECM in the Adversary Proceeding;

3. That the Court declare and decree that Penn National is not obligated in any way to pay any damages that may be awarded against ECM in the Adversary Proceeding;

4. That the costs of this action be taxed against the Defendant;

5. For a trial by jury on all issues so triable; and

6. For such other and further relief as the Court may deem just and proper.

This the 9th day of April, 2019.

**GOLDBERG SEGALLA LLP**

/s/ David L. Brown
David L. Brown
N. C. State Bar #: 18942
David G. Harris II
N. C. State Bar #: 35327
800 Green Valley Road, Suite 302
Greensboro, NC  27408
Telephone:  336.419.4900
Facsimile:  336.419.4950
dbrown@goldbergsegalla.com
dharris@goldbergsegalla.com

*Attorneys for Plaintiffs Penn National Security Insurance Company and Pennsylvania National Mutual Casualty Insurance Company*